**Darnell L. HATTON, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 49A04–8608–PC–234.**

Court of Appeals of Indiana, Fourth District.

Dec. 11, 1986.

Rehearing Denied Feb. 3, 1987.

Susan K. Carpenter, State Public Defender, Jo Ann Farnsworth, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Darnell L. Hatton appeals the denial of his petition for post-conviction relief on grounds that the trial court erred in concluding his guilty plea was made knowingly, voluntarily, and intelligently. On January 16, 1979, Hatton was charged with two counts of Attempted Robbery, Class B felonies. He entered guilty pleas to both counts on May 2, 1979. A written plea agreement was filed with the court on that date which was not signed by Hatton, his counsel, nor the deputy prosecuting attorney. Hatton was sentenced on September 7, 1979 to two concurrent 10 year terms.

Hatton filed a petition for post-conviction relief claiming his pleas of guilty were not entered knowingly, intelligently and voluntarily. A hearing was conducted on March 6, 1986 and the court concluded Hatton failed to meet his burden of proof and error, if any, was harmless. Hatton now appeals and argues the trial court failed to inform him before his guilty plea that 1) he was waiving his privilege against compulsory self-incrimination; 2) he was waiving

his right to a speedy trial; 3) the trial court is not a party to nor bound by any plea agreement; and, 4) the minimum and maximum penalties for the offenses charged. Because we find the record does not disclose that Hatton was informed of his right against self-incrimination and knew he was waiving this privilege, we reverse on that ground and need not address the other issues raised by Hatton.

In *Boykin v. Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, Justice Douglas, writing for the Court, identified three constitutional due process rights which the record must disclose the defendant knew he was waiving before a reviewing court can affirm a finding that a guilty plea was voluntarily and intelligent: the right to a trial by jury, the right to confront one's accusers, and the right against self-incrimination. Justice Douglas stated:

> It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary ... We cannot presume a waiver of these three important federal rights from a silent record.

395 U.S. at 242–243, 89 S.Ct. at 1711–1712. The guilty plea proceedings do not show Hatton was informed of his right against self-incrimination or knew he was waiving this privilege. Although the plea bargain submitted to the court does recite the three *Boykin* rights are being waived, neither the defendant, his counsel, nor the deputy prosecuting attorney signed this agreement so this agreement does not disclose, on the record, that Hatton knew of this right or that he was waiving his privilege against self-incrimination.

■ The State quotes the following interchange between the court and the defendant during the guilty plea hearing:

THE COURT: Okay, before I accept your pleas I have to advise you of certain cherished constitutional rights that you're giving up here, see if you understand those rights. Mr. Hatton, how old are you?

DEFT. HATTON: Twenty-two.

THE COURT: Pardon me?

DEFT. HATTON: Twenty-two.

THE COURT: Twenty-two. How far did you go in school?

DEFT. HATTON: High School.

THE COURT: High School. Do you read and write?

DEFT. HATTON: Yes.

THE COURT: Okay. Did you understand the plea agreement?

DEFT. HATTON: Yes.

(R.53–54).

The record, however, does not disclose which plea agreement the court and the defendant are referring to. Since plea agreements are the natural result of a number of discussions and negotiations, we cannot assume the unsigned plea agreement filed with the court is the one referred to by the court in its question or by the defendant in his answer. In its brief, the State does not refer to the only other portion of the guilty plea hearing record which may refer to the plea agreement. The court stated, "Now, the *recommendation* is that you fellows would receive ten years apiece, would be run concurrently with a sixty year sentence which you're serving." R.57. We find the combination of an unsigned plea agreement, one general reference to a plea agreement, and a specific reference to the sentence recommended does not disclose, on the record, that the defendant knew of his privilege against self-incrimination or that he knew he was waiving this privilege.

The State contends that this portion of the guilty plea hearing and an examination of the entire record reveals Hatton was meaningfully advised of his rights under the *White* standard of review.[1] However,

---

1. In *White v. State* (1986), Ind., 497 N.E.2d 893, our supreme court articulated a new standard of review for assessing collateral attacks on criminal convictions.

"To decide a claim that a plea was not made voluntarily and intelligently, we will review all the evidence before the court which heard his post-conviction petition, including testimo-

meeting *White's* requirements is not equivalent to meeting the federal constitutional requirements of *Boykin,* and *Boykin's* standards must be met regarding the right to trial by jury, the right to confront one's accusers, and the right against self-incrimination.

In reaching our decision, we must necessarily distinguish this case from the recent Supreme Court decision in *Steven Kay v. State of Indiana,* 499 N.E.2d 1113 (1986). In *Kay,* at the guilty plea hearing the court: 1) informed Kay of his three *Boykin* rights, 2) informed Kay of all required statutory advisements except the possibility of enhanced sentence, and 3) did not inform Kay that he was waiving these rights by entering a guilty plea. The plea agreement was no help because "it simply reflects Kay's agreement to plead guilty to robbery in exchange for a sentence of twenty (20) years imprisonment ..." *Kay, supra,* p. 1115. Under these facts, the Supreme Court applied *White, supra,* and placed the burden on Kay to show the omitted plea advisements, if given, would have changed his decision to plead guilty. Our Supreme Court concluded, "while demonstrating the absence of the *statutory* plea advisements, petitioners [sic] evidence at the post-conviction hearing wholly fails to show that the omitted plea advisements would have changed Kay's decision to plea. We therefore conclude that petitioner's claim is without merit ..." *Kay, supra,* p. 1115. (emphasis added).

ny given at the post-conviction trial, the transcript of the petitioner's original sentencing, and any plea agreements or other exhibits which are a part of the record.

A petitioner who claims that his plea was involuntarily and unintelligent but can only establish that the trial judge failed to give an advisement in accordance with § 35–35–1–2 has not met his burden of proof. He needs to plea specific facts from which a finder of fact could conclude by a preponderance of the

■ Here, we find there is no dispute that the court failed to inform Hatton of his *Boykin* right against self-incrimination. This advisement did appear in the unsigned plea agreement which, as noted earlier, was not established as a document which the defendant read, understood, or was even aware of. Thus, here the record discloses Hatton, unlike Kay, was never informed of his right against self-incrimination. Therefore, we cannot presume the entry of his guilty plea acts as a waiver of this right under *Kay.* Had the unsigned plea agreement in this case, which includes all three *Boykin* rights, been signed or identified at the guilty plea hearing as the one which Hatton had read and agreed to, our decision would be controlled by *Kay* as the record would have disclosed Hatton was informed of his *Boykin* rights.

■ The facts of this case warrant reversal. We remand with instructions to grant Hatton's motion for post-conviction relief.

CONOVER, P.J., and YOUNG, J., concur.

evidence that the trial judge's failure to make a full inquiry in accordance with § 35–35–1–2(a) rendered his decision involuntary or unintelligent. Of course, unless the record reveals that the defendant knew he was advised at the time of his plea that he was waiving his right to a jury trial, his right of confrontation and his right against self-incrimination, *Boykin* will require that his conviction be vacated."