Richard COLVIN, a/k/a Fareed Muhammad, Appellant,

v.

STATE of Indiana, Appellee.

No. 382S124.

Supreme Court of Indiana.

Nov. 30, 1982.

Susan K. Carpenter, Public Defender, David R. Swinford, Deputy Public Defender, Indianapolis, for appellant.

GIVAN, Chief Justice.

This is an appeal from the denial of a post-conviction relief petition. Appellant was convicted of two counts of armed robbery and was sentenced to thirty (30) years imprisonment on December 5, 1974. His direct appeal to this Court resulted in the affirmance of his conviction. *Colvin v. State,* (1976) 264 Ind. 514, 346 N.E.2d 737, *cert. denied,* 429 U.S. 1049, 97 S.Ct. 760, 50 L.Ed.2d 765 (1976). Appellant twice previously petitioned the trial court for post-conviction relief. Both petitions were denied. On January 2, 1981, appellant filed a pro se verified petition for post-conviction relief. The presiding judge summarily denied appellant's petition. Appellant claims abuse of trial court discretion.

■ A hearing on a petition for post-conviction relief is required only when an issue of material fact is presented. When the allegations of the petition conclusively demonstrate the petitioner is entitled to no relief, a hearing on the matter is unnecessary. *Baker v. State,* (1976) 265 Ind. 411, 355 N.E.2d 251. The petition alleges (a) his sentence is in violation of the constitutions of the United States and the State of Indiana and the laws of the State; (b) the Court was without jurisdiction to impose the sentence, which was erroneous, based upon evidence "not previously heard requiring vacation of conviction of sentence;" (c) trial misconduct by counsel, court and jury and incompetency of counsel; and (d) his sentence was in violation of the United States Constitution, Amendments I, IV, V, VIII, IX and XIV.

Attached to the petition was a pleading entitled "Motion to Dismiss for Lack of Jurisdiction over Plaintiff," who is presumed to be the petitioner-appellant. Appellant, responding to the court's inquiry, stated this pleading supports each allegation in the petition.

The thrust of appellant's "Motion to Dismiss" is that:

"Plaintiff is a New Afrikan by birth and remains a New Afrikan by choice. As a New Afrikan, Plaintiff is a Citizen of the Republic of New Afrika a Nation captive and colonized by the United States of America and various European nations which held original jurisdiction over the forefathers and founders of the United States of America."

The motion also traces United States black history, dating from the seventeenth century.

The trial court, following the dictates of Rule PC 6, wrote a memorandum containing his specific findings of fact and conclusions of law. The memorandum correctly and succinctly identifies petitioner's supporting arguments as follows:

"[The] slave trade ... brought his ancestors to this continent and to this country. He argues that 'Jurisdiction which results from kidnapping and enslavement of human beings is illegal.' He proceeds to argue that 'The jurisdiction claimed over the plaintiff [defendant/petitioner] by the United States and the State of Indiana being an incident of slavery is in fact violative of the 13th Amendment of the Constitution and thus cannot be sustained.'

"In essence, Muhammed argues that, but for the slave trade, he would not be here; hence his subjection to the laws of this State (as opposed to the laws of some other political entity he might otherwise have been born into), constitutes an incident of slavery.

"He also suggests that '... the human right of the New Afrikan to be free of a slave system created jurisdictional claim is a fundamental right to be protected by the 9th Amendment.' Muhammed also draws about himself the mantle of a political prisoner, claiming that a State of War exists between the United States and the Republic of New Afrika, and that he is thus entitled to the protection of the Geneva Convention."

Appellant cites several cases for the proposition that one who has been forcefully abducted from another jurisdiction may not be tried in the receiving jurisdiction. *U.S. v. Toscanino,* 500 F.2d 267 (1974 2d Cir.); *United States ex rel. Lujan v. Gengler,* 510 F.2d 62 (1975 2d Cir.). It stretches credulity to compare the appellant with a person who has been kidnapped from one jurisdiction to another. His sole claim to this status being the fact that his distant ancestors were brought to America in slavery.

The United States would find itself in an impossible situation concerning law enforcement if the entire black population would not be subject to the laws of the United States because their distant ancestry were forcefully brought here in slavery.

Appellant does not claim his sentence is more severe than one imposed on nonblack members of society. Appellant's mere presence in the United States is not, in our opinion, an incident of slavery.

Even if one would accept appellants somewhat unusual argument as being true, the trial court was correct in observing that even an alien residing in this country is subject to the laws while within its borders. In support of this the trial court quoted from 45 Am.Jur.2d, International Law § 81, (1969)

"Generally, the criminal jurisdiction of every nation may be exercised for the punishment of crimes committed within its territory, even though the offender is an alien. A sovereign nation has exclusive jurisdiction to punish offenses against its laws committed within its borders, unless it expressly or impliedly consents to surrender its jurisdiction."

The trial court correctly concluded that appellant's citizenship, whether acquired before or after his criminal offense of robbing a Kroger Store, would not affect the juris-

diction of the court's of this State with respect to crimes committed herein.

The trial court properly denied appellant's petition for post-conviction relief.

All Justices concur.